## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBORAH LEE PRINCE, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:16–cv–01472 (JCH) |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, Acting | : | JANUARY 19, 2018 |
| Commissioner, Social Security | : | |
| Administration, | : | |
| Defendant. | : | |

### RULING RE: MOTION FOR ORDER TO REVERSE FINAL DECISION OF COMMISSIONER (DOC. NO. 26) & MOTION FOR ORDER AFFIRMING THE COMMISSIONER'S DECISION (DOC. NO. 34)

## I.     INTRODUCTION

Plaintiff Deborah Lee Prince ("Prince") brings this appeal under section 405(g) of title 42 of the United States Code from the final decision of the Commissioner of the Social Security Administration ("SSA"), which denied her application for Title II disability insurance benefits and Title XVI supplemental security income. See Complaint ("Compl.") (Doc. No. 1). Prince seeks either reversal or remand of the Decision rendered by Administrative Law Judge ("ALJ") Richard A. DiBiccaro, which affirmed the Commissioner's denial. See Motion for Order to Reverse Final Decision of Commissioner ("Mot. to Reverse") (Doc. No. 26). The Commissioner cross-moves for an order affirming that Decision. See Motion for Order Affirming the Commissioner's Decision ("Mot. to Affirm") (Doc. No. 34).

For the reasons set forth below, the Motion for Order to Reverse Final Decision of Commissioner is **GRANTED**. The Motion for Order Affirming the Commissioner's Decision is **DENIED**.

## II. PROCEDURAL HISTORY[1]

Prince applied for disability and supplemental security income benefits on February 15, 2013, alleging a disability onset date of September 26, 2008. See Stipulation of Facts ("Stip. of Facts") (Doc. No. 26) at 1. The Commissioner denied Prince's application initially on May 21, 2013, and upon reconsideration on July 21, 2013. See Pl.'s Mem. in Supp. of Mot. for Order to Reverse ("Pl.'s Mem.") (Doc. No. 26) at 2. Prince requested a hearing with an ALJ, which was held before ALJ DiBiccaro on July 9, 2014. See Stip. of Facts at 1. A supplemental hearing was later held on November 14, 2014. See id.

On January 30, 2015, ALJ DiBiccaro issued an unfavorable decision for Prince, affirming the Commissioner's denial and finding that Prince was not disabled. See id. Specifically, ALJ DiBiccaro found that Prince's impairments did not meet or equal any listing, see id. at 2, and that, with her level of residual functional capacity ("RFC"), there were jobs in the national economy that she could perform, see id. Prince requested review by the Appeals Court, which denied the request on June 8, 2016. See id. at 1–2. Following that denial, ALJ DiBiccaro's January 30, 2015 Decision became a final decision reviewable by this court. See id. Prince then filed this appeal on August 29, 2016. See Compl.

## III. FACTS

The court adopts the facts as stated in the Plaintiff's Stipulation of Facts, to which the Commissioner stipulated. See Mem. in Supp. of Mot. to Affirm ("Def.'s Mem.") (Doc.

---

[1] The procedural history set forth herein is derived from Prince's Statement of Facts, to which the Commissioner stipulated. See Mot. to Reverse at 24–45; Mem. in Supp. of Mot. to Affirm ("Mot. to Affirm Mem.") (Doc. No. 34-1) at 2.

No. 34-1) at 2.  Only those facts relevant to the issues raised in the Motions before the court are set forth below.

At the time of the July 9, 2014 administrative hearing, Prince was 51-years-old and was living in a camper on private property.  See Stip. of Facts at 5; Certified Transcript of Record ("R.") at 381.  Prince last worked as a certified nurse's assistant ("CNA") at Gaylord Hospital, but was no longer able to work after September 26, 2006, when she was injured while trying to assist a patient.  See id. at 7; R. at 582.  The onset date of Prince's alleged disability occurred two years later, on September 26, 2008. See R. at 311.

Prince's physicians have diagnosed her with carpal tunnel syndrome, bilateral ulnar nerve dysfunction, cervical degenerative disc disease, cervicogenic migraines, and neuropathy.  See Stip. of Facts at 7–22.  Prince's medical issues appear to have begun in 1989, when she tripped over a bicycle and her arm went through a glass window.  See id. at 7; R. at 384.  After the accident, she underwent reconstruction of her hand, forearm, and eight flexor tendons to repair damage to her ulnar nerve, ulnar artery, and forearm.  See Stip. of Facts at 7.  Before 2009, Prince was treated by Dr. Nasir Ramin, Dr. Babu Kumar, and Dr. Mustapha Kemal.  See id. at 7–13.  Prince also attended physical therapy in 2008 for chronic back pain, hand numbness, and carpal tunnel syndrome.  See id. at 8–10.  Prince's medical record is interrupted by a gap from February 2009 until October 2012, when she did not receive any treatment for her impairments.  See id. at 13.  After 2012, Prince established a primary care relationship with Dr. Muneeb Samma.  See id. at 13–22.

## IV. STANDARD OF REVIEW

Under section 405(g) of title 42 of the United States Code, it is not a function of the district court to review de novo the ALJ's decision as to whether the claimant was disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Instead, the court may only set aside an ALJ's determination as to social security disability if the decision "is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence requires "more than a mere scintilla," but is a "very deferential standard of review." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447–48 (2d Cir. 2012). It requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 448. If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment for the Commissioner's. 42 U.S.C. § 405(g) (2016); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

## V. DISCUSSION

Prince argues that ALJ DiBicarro's Decision should be reversed or remanded for three reasons. First, she argues that certain documents that should have been considered by the ALJ were not in the Record. See Pl.'s Mem. at 8–9. Second, Prince argues that the ALJ erred by ignoring testimony from the vocational expert that there was no work available for her. See id. at 9–10. Third, she argues that the ALJ erred by not finding several ailments to be severe, not determining that her combination of impairments meet or medically equal the listed impairments, and ignoring impairments that were not found to be severe. See id. at 5–7.

Prince's first argument—that certain medical documents she provided to her counsel are missing from the Record—is her only argument that the Record was

incomplete. <u>See</u> Pl.'s Mem. in Reply to the Def.'s Mem. ("Pl.'s Reply") (Doc. No. 37) at

2. Although she does not argue that the ALJ failed to adequately develop the Record in

other respects, in view of the "special solicitude" courts accorded to <u>pro</u> <u>se</u> litigants, the

court will construe Prince's specific failure to develop the record claim as encompassing

other aspects of the Record the ALJ had a duty to develop. <u>See</u> <u>Triestman v. Fed.</u>

<u>Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the

submissions of a <u>pro</u> <u>se</u> litigant must be construed liberally and interpreted 'to raise the

strongest arguments that they suggest.'") (quoting <u>Pabon v. Wright</u>, 459 F.3d 241, 248

(2d Cir. 2006)).

Upon review of the Record, the court concludes that the ALJ committed legal

error by failing to adequately develop the Record to obtain clarification from Prince's

treating physician, and therefore remand is appropriate. Upon remand, the court

suggests that the ALJ should also develop the Record regarding Prince's explanations

for her decision not to undergo carpal tunnel release and the gap in her treatment

before drawing an adverse inference about her credibility on either of those bases.

A. <u>Duty to Develop the Record</u>

An ALJ in a Social Security benefits hearing has an affirmative obligation to

develop the record adequately. <u>See</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999).

Although this obligation is heightened where the plaintiff is <u>pro</u> <u>se</u>, <u>see</u> <u>Echevarria v.</u>

<u>Secretary of HHS</u>, 685 F.2d 751, 755 (2d Cir. 1982), the "non-adversarial nature" of

Social Security benefits proceedings dictates that the obligation exists "even when . . .

the claimant is represented by counsel." <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996)

("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' . . . .") (quoting <u>Echevarria</u>, 685 F.2d at 755).

1. Treating Physician Opinion

The expert opinions of a treating physician are of particular importance to a disability determination.  See <u>Hallet v. Astrue</u>, No. 3:11-cv-1181, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (concluding that "[b]ecause the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician" and remanding for further development of the record).  SSA regulations give the opinions of treating physicians "controlling weight," so long as those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in . . . [the] record."  20 C.F.R. § 416.927(c)(2); <u>see also</u> <u>Lesterhuis v. Colvin</u>, 805 F.3d 83, 88 (2d Cir. 2015).  In other words, "the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."  <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (quoting <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003)).  "Even if the treating physician's opinion is contradicted by other substantial evidence, and so is not controlling, it may still be entitled to significant weight 'because the treating source is inherently more familiar with a claimant's medical condition than are other sources.'"  <u>Tankisi v. Comm'r of Social Sec.</u>, 521 F. App'x 29, 33 (2d Cir. 2013) (Summary Order) (quoting <u>Schisler v. Bowen</u>, 851 F.2d 43, 47 (2d Cir. 1988)).

Although the ALJ requested and obtained a medical opinion from Prince's treating physician, Dr. Samma, the opinion merely contained check boxes without any elaboration.  See R. at 507–18.  In his Decision, the ALJ pointed to Dr. Samma's treatment notes from the day he completed Prince's disability paperwork, in which Dr. Samma stated, "disability paperwork filled based on patient's responses."  R. at 22, 693.  The ALJ indicated that he understood Dr. Samma to mean that the answer to each question in the questionnaire was in effect answered by Prince, not Dr. Samma.  See R. at 22.  It is not apparent whether, in completing the treating source statement, Dr. Samma drew upon any of his experience or ability to interpret Prince's symptoms or test results, or if he was simply a scribe for Prince.

Given the critical role a treating physician opinion plays in the ALJ's determination, upon receiving a clearly inadequate opinion, the ALJ was obligated to contact Dr. Samma or ask Prince's representative to re-contact Dr. Samma for an opinion in which Dr. Samma offered his expertise and knowledge of his patient.  The ALJ afforded Dr. Samma's opinion "little weight" because it was "not supported by the objective medical evidence, including his own record of treatment" and because the "medical source statement reflects the claimant's subjective allegations rather than Dr. Samma's medical conclusions."  R. at 22.  Before deciding not to grant the treating physician opinion controlling weight for those reasons, the ALJ should have re-contacted Dr. Samma.  See, e.g., Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (noting that before relying on a "remarkably vague" treating physician's opinion that contradicted claimant's testimony, "[a]t a minimum, the ALJ likely should have contacted [the treating physician] and sought clarification of his report."); Cammy v. Colvin, No. 12-

CV-5810 (KAM), 2015 WL 6029187, at *16 (E.D.N.Y. Oct. 15, 2015) (remanding because the ALJ failed to seek additional information from the treating physicians to clarify inconsistencies); Gabrielsen v. Colvin, No. 12-CV-5694 (KMK) (PED), 2015 WL 4597548, at *7 (S.D.N.Y. July 30, 2015) (finding that the ALJ had the obligation to re-contact the treating physician to seek clarifying information given the treating physician's unique position to resolve certain inconsistencies and the heightened duty to develop the record in cases of mental impairment); Rysztenyk v. Astrue, No. 12-CV-2431 (SLT), 2014 WL 2986700, at *11 (July 1, 2014 S.D.N.Y. 2014) (remanding where the ALJ made no attempt to clarify the inconsistency between the treating physician's treatment notes and his source statement); but see, Vanterpool v. Colvin, 12-CV-8789, 2014 WL 1979925, at *17 (S.D.N.Y. May 14, 2014) (holding that the ALJ was not required to contact the physician for further information or clarification when the record was complete).

An ALJ is not always required to re-contact a treating physician to clarify inconsistencies. The ALJ may conclude that re-contacting a treating physician would be futile. See 20 C.F.R. § 404.1520b(b)(2)(i) ("We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary information.") However, ALJ DiBiccaro made no finding about why Dr. Samma could not have clarified his medical source statement. See R. at 22; see also Gabrielsen, 2015 WL 4597548, at *7 (holding that the ALJ failed to comply with the regulations when he did not make a finding that re-contacting the treating physician would be unproductive). In addition, the Second Circuit has held that the complete absence of a treating physician opinion is not per se

error.  See Tankisi, 521 F. App'x at 34.  If it is not always error to decide a disability claim without a treating physician opinion, it follows that the ALJ is not always required to re-contact a treating physician where the opinion is inadequate.

Assessing whether it was legal error for an ALJ to fail to request clarification from a treating physician is a case-specific inquiry that turns on whether an ALJ could reach an informed decision based on the record.  See Gabrielsen, 2015 WL 4597548 at *6 (holding that whether the ALJ has an obligation to seek additional information from the treating physician depends on the nature of the record); see also Sanchez v. Colvin, No. 13 Civ. 6303 (PAE), 2015 WL 736102, at *9 (S.D.N.Y. Feb. 20, 2015) (remanding where, without a treating physician opinion, the record did not enable the ALJ to render a considered judgment of the claimant's RFC).  For example, in Tankisi, the court noted that the medical record was "quite extensive" and, even though a formal treating physician opinion was missing, the record included a treating physician's assessment of the claimant's limitations.  See, Tankisi, 521 F. App'x at 34.

In contrast, the Record in this case contains no indication of Dr. Samma's views as to Prince's RFC in light of her impairments.  Dr. Samma's treatment notes, which typically contain no more detail than "neck pain" or "carpal tunnel syndrome," see, e.g., R. at 679, do not compensate for the lack of a substantive treating physician opinion, see Sanchez, 2015 WL 736102 at *8 ("The critical point is that all of these records lack the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature of Sanchez's mental-health conditions and their impact on her RFC.")  While the ALJ assigned various degrees of weight to opinions from consulting physicians, those opinions are not sufficient to

enable the ALJ to ascertain the extent of Prince's limitations. Although the ALJ assigned "significant weight" to Dr. Maria Lorenzo's consultative opinion for Disability Determination Services, <u>see</u> R. at 22, Dr. Lorenzo did not conduct a physical evaluation of Prince and wrote her opinion before tests Prince underwent on June 23, 2014, that revealed moderately severe degeneration in part of her cervical spine, <u>see</u> R. at 176–78, 670. The ALJ afforded only moderate weight to the subsequent consultative opinion of Dr. Joseph Guarnaccia from Disability Determination Services, who made observations on the basis of a physical examination and then wrote a brief assessment. <u>See</u> R. at 19–20, 583–84. The ALJ noted that the first half of the assessment was overly vague. <u>See</u> R. at 20. He assigned more weight to the second half of the assessment, which was consistent with the evidence that Prince's use of her right hand is limited, but that information only addresses one aspect of Prince's impairments. <u>See</u> <u>id.</u> A less conclusory opinion from Dr. Samma was necessary in order to substantiate his treating physician opinion and either resolve or reveal the inconsistencies the ALJ perceived between his opinion and his treatment notes.

Given the contents of the rest of the Record, the court concludes that, in this case, it was error for the ALJ to fail to follow-up with Prince's treating physician. "This error, in turn, called into question the next step of the ALJ's analysis, in which the ALJ assessed, based on the claimant's perceived RFC, whether there were jobs in the national economy that she could perform." <u>Sanchez</u>, 2015 WL 736102 at *9. This case must be remanded so that the ALJ can obtain clarification or further information from Dr. Samma.

### 2. Additional Evidence

Prince argues that there were medical documents that she thought were in the Record but do not appear, and that the absence of those documents constitutes error. See Pl.'s Mem. at 8–9, Ex. A. The Commissioner argues that the documents Prince identifies in her briefs are in fact contained in the Record, repeat material already in the Record, or do not meet the test for admitting additional evidence after the administrative record has closed. See Def.'s Mem. at 13–18. In her Reply, Prince explains that she had provided her counsel with the missing medical records for submission to the ALJ, but that they never became part of the Record, a fact which only became known to Prince upon her receipt of the Record when she appealed. See Pl.'s Reply at 3. Prince attached additional medical records to her Reply. See id. at 3, Ex. B.

Under section 405(g) of title 42 of the United States Code, "[t]he court . . . may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The Second Circuit has set forth a three-part test for additional evidence. See Tirado v. Bowen, 842 F. 2d 595, 597 (2d Cir. 1988). First, the claimant must show that the evidence is "new and not merely cumulative of what is already in the record." Id. Second, the evidence must be "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. Finally, the claimant must show "good cause for her failure to present the evidence earlier." Id.

The first five documents Prince attaches to her opening brief predate the alleged onset of disability in February 26, 2008 and are therefore not material. See Pl.'s Mem. at 8–9, Exs. A.1–5. The sixth document, an evaluation by Dr. Cristina Brunet from September 25, 2014, does not present "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." See Pl.'s Mem., Ex. A.6. The ALJ considered the X-ray results Dr. Brunet included in her Report. See R. at 20. However, upon remand, the ALJ should consider Dr. Brunet's Report, which also contains a physical examination and Prince's discussion of her symptoms.

The first half of the documents attached to Prince's Reply predate the onset of disability. See Reply, Ex. B at 1–24. The rest of the documents, which come from the time period after the onset of disability, do not contain new information that supports Prince's claim for disability. See id. at 25–41. Although the treatment notes from February 2009 to November 2009 close some of the gap in Prince's medical treatment, the inclusion of those documents in the Record is unlikely to have changed the ALJ's view of the gap in treatment. See id at 30–41. Even with the addition of the documents attached to Plaintiff's Reply, the treatment gap still spans from November 2009 to October 2012, a marginal difference from the treatment gap from February 2009 to October 2012 the ALJ evaluated. See R. at 18–19; Statement of Facts at 13. Further, the additional treatment notes do not provide information about Prince's impairments not already contained in the existing Record. The neck and back pain are redundant of the post-onset treatment notes contained in the Record, and the ALJ incorporated Prince's respiratory difficulties in her RFC. See Reply, Ex. B at 25–41. Although the

additional evidence is not a ground for remand, the ALJ should consider these records given that the case is remanded for another reason.

    B.    Credibility

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). The ALJ must follow the two-step process set forth in the regulations for evaluating a claimant's assertions of pain and other limitations. See id. "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' in the record." Id. (quoting 20 C.F.R. § 404.1529(a)).

At the first step, the ALJ DiBiccaro found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. at 16. However, at the second step, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. at 16.

Under SSR 96-7p, an ALJ may find that a claimant's statements are less credible "if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as

prescribed and there are no good reasons for this failure." However, before drawing an inference, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id. The ALJ noted that Dr. Samma's treatment notes reflect that Prince reported that her surgeon had "advised against re-do wrist surgery" and that she was not considered a candidate for carpal tunnel release. See R. at 21. However, when he reviewed the notes from Prince's consultation with her hand surgeon, the ALJ saw that the surgeon had not advised against surgery. See id. Rather, he had discussed the risks and benefits of surgery with Prince and stated that it was "unclear" if Prince would benefit from carpal tunnel release "given her complex past surgical history." R. at 652. Prince then decided not to undergo the procedure "given risks of failure to improve symptoms with surgery." Id. Based on his parsing of the Record, the ALJ concluded that "claimant's decision not to pursue surgery still implicates the credibility of her allegation that her current symptoms essentially render her unable to effectively use her hands," R. at 21, and also included Prince's lack of "emergency treatment," R. at 19, and her "conservative treatment," R. at 22, in his decision not to credit her testimony about the severity of her symptoms.

A physician may leave the ultimate decision to a patient even when the risks of an operation outweigh the benefits. Without developing the record regarding Prince's explanation for why she did not undergo surgery, the ALJ had insufficient information to assume that Prince's decision indicated her limitations were not as extensive as she claimed. For example, in the "Claimant's Recent Medical Treatment" form in her disability paperwork, Prince wrote that her hand surgeon had advised against surgery

because of existing damage to her right arm and that "removing scar tissue would cause more damage." R. at 364. The comment by the ALJ that "the claimant's previous surgery on her right forearm was essentially successful" is hardly a basis to reject Prince's avoidance of a second surgery where the surgeon would face a different situation (e.g. scar tissue from the first surgery). R. at 21. If the ALJ had asked questions of Prince at the hearing or followed-up with her hand surgeon, he could have gathered more information about the choice she confronted and made an informed judgment about how her decision reflects on the credibility.

It is a close question whether this issue alone would be a basis to remand. See Genovese v. Astrue, No. 11-CV-02054 (KAM), 2012 WL 4960355, at *12 (E.D.N.Y. Oct. 17, 2012) ("[A]n ALJ is required to develop the record regarding a claimant's failure to seek treatment in order to take into account any explanations for such failure.") Because the court is remanding on the basis of the ALJ's failure to develop the record and contact Prince's treating physician, it need not decide whether the ALJ's cursory assessment of Prince's decision to decline surgery constituted legal error. However, on remand, the ALJ should develop the Record in order to meaningfully assess Prince's explanation for her course of treatment.

Review of the ALJ's determination of Prince's credibility is further complicated by the ALJ's failure to apply the proper Social Security Ruling when analyzing Prince's decision regarding surgery. Instead of applying SSR 96-7p, the ALJ analyzed whether Prince had established a "justifiable" cause not to undergo surgery pursuant to SSR 82-59. See R. at 21. SSR 82-59 provides that a claimant may be "denied disability benefits if the Secretary finds that she unjustifiably failed to follow prescribed treatment

and that if she had followed the treatment, she would not be disabled under the Act."
Spruill ex rel. J.T. v. Astrue, No. 6:12-CV-6060 (MAT), 2013 WL 885739, at *11
(W.D.N.Y. Mar. 8, 2013) (quoting McFadden v. Barnhart, No. 94 Civ. 8734 (RPP), 2003
WL 1483444, at *8 (S.D.N.Y. Mar. 21, 2003)). Here, the ALJ had not already found
Prince disabled, nor did his findings regarding her decision about treatment conclusively
prohibit her from receiving benefits, as required under SSR 82-59. See R. at 21.

On remand, the ALJ should apply SSR 96-7p when analyzing Prince's decision
not to undergo surgery and develop the record to allow for a meaningful basis to assess
Prince's credibility.

ALJ DiBiccaro also found that the long gap in treatment between 2009 and 2013
undermined Prince's credibility. R. at 19. At the hearing on July 9, 2014, Prince's
representative explained that Prince did not attend treatment because a lack of
transportation and health insurance, see R. at 65, but in his Decision, the ALJ stated
that there was no evidence to support those assertions, see R. at 19. As with her
decision not to have surgery, under SSR 96-7p, the ALJ is obligated to consider
Prince's reasons for not continuing her medical treatment before drawing an adverse
inference regarding her credibility. See SSR 96-7p, 1996 WL 374186, at *7. The ALJ
arguably considered Prince's reasons when he dismissed the explanation of Prince's
representative because there was "no evidence to support these assertions." R. at 19.

However, if the ALJ had developed the record, he may have discovered support
for Prince's reasons for not pursuing treatment. See Manfra v. Colvin, No. 15-CV-2844
(JEB), 2016 WL 4434820, at *15 n.3 (E.D.N.Y. Aug. 22, 2016) (noting that "the ALJ
erred by failing to adequately develop the record, specifically with regard to plaintiff's

inability to afford treatment due to lack of insurance coverage"); <u>Vincent v. Astrue</u>, No. 08-CV-0956 (VEB), 2010 WL 10827101, at *6 (N.D.N.Y. Mar. 30, 2010) ([T]he duty to develop the record applies with full force in the context of the ALJ's credibility determination."); <u>but see</u>, <u>Moore v. Colvin</u>, 15-CV-00908T, 2016 WL 7056573, at *4 (W.D.N.Y. Dec. 5, 2016) (affirming the ALJ's decision where the claimant's lack of treatment or inability to afford it was not the "sole" reason the ALJ challenged her credibility). In her Reply, Prince explains that her medical insurance coverage ended in late 2008, after which she borrowed money to continue treatment and pay for prescriptions. <u>See</u> Pl.'s Reply at 4. According to Prince, from 2009 until 2012—roughly the period of the gap in her treatment—she was no longer able to borrow money and obtain rides to and from appointments. <u>See</u> <u>id.</u> Prince asserts that, in 2012, she was able to secure public assistance, including medical assistance, and resume treatment. <u>See</u> <u>id.</u> On remand, the ALJ should develop the record as to whether Prince has evidence to support her explanation—such as her insurance or public assistance records—before factoring the gap in treatment into her credibility.

      C.    <u>Vocational Expert Testimony</u>

Prince argues that ALJ DiBicarro ignored testimony from the vocational expert, Richard B. Hall, that clearly pointed to a conclusion that she is disabled. <u>See</u> Pl.'s Mem. at 9–10. She also argues that the ALJ's determination of her RFC was not supported by substantial evidence. <u>See</u> Pl.'s Reply at 7–10. The Commissioner argues that the ALJ's determination was supported by substantial evidence and that it was not necessary for the ALJ to consider at Step Five limitations not clearly established by the record. <u>See</u> Def.'s Mem. at 6.

Over the course of two administrative hearings, ALJ DiBiccaro and Prince's representative posed seven hypotheticals to the vocational expert. <u>See</u> R. at 101–15 (July 9, 2014 Hearing), 38–56 (November 14, 2014 Hearing). Only one of those hypotheticals was accurately based on the RFC the ALJ ultimately determined: the other hypotheticals presented Prince's RFC with variations that included additional limitations. <u>See</u> <u>id.</u>, R. at 15–16. In order to rely on a vocational expert's testimony regarding a hypothetical, there must be substantial evidence "to support the assumption[s] upon which the vocational expert based his opinion" and the hypothetical must "accurately reflect the limitations and capabilities of the claimant involved." <u>See</u> <u>McIntyre v. Colvin</u>, 758 F.3d 146, 151 (2d Cir. 2014). An ALJ may disregard a vocational expert's response to a hypothetical based on additional limitations that the ALJ does not find are supported by substantial evidence in the record. <u>See</u> <u>Suarez v. Colvin</u>, 102 F. Supp. 3d 552, 582 (S.D.N.Y. 2015). The court concludes that the ALJ did not err when he disregarded the vocational expert's testimony that several of the hypotheticals that contained additional limitations beyond Prince's RFC described a worker who would not be employable.

D.    <u>Severity of Ailments and Listed Impairments</u>

Prince argues that ALJ DiBiccaro erred by not finding her migraine headaches, asthma, bronchitis, and Reactive Airway Disease ("RAD") to be severe. <u>See</u> Pl's Mem. at 5–6. In addition, she argues that the combined effect of her impairments meets, or medically equals, the severity of the listed impairments in 20 C.F.R. § 404, Sbpt. P, App. 1. <u>See</u> <u>id.</u> at 6–7. Finally, she argues that the ALJ erred by ignoring conditions that he did not deem severe. <u>See</u> <u>id.</u> The Commissioner argues that the ALJ's findings

are supported by substantial evidence.  See Def.'s Mem. at 4.  The Commissioner also argues that, even assuming that the ALJ erred by not finding several of Prince's impairments to be severe, such an error would be harmless because the ALJ considered all impairments—severe and non-severe—in his analysis after Step Two. See id. at 4–6.

At Step Two of the sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  Step Two is a threshold inquiry designed only "to screen out de minimis claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

The ALJ's failure to make a finding regarding Prince's migraines and respiratory impairments at Step Two of his analysis does not constitute a reversible error because he considered those conditions in formulating the RFC.  See Kessler v. Colvin, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) ("Because Step Two merely serves as a filter to screen out de minimis disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements.").[2]  Given that the ALJ found several of Prince's impairments to be severe and proceeded to the next step of the sequential evaluation process, his failure to consider all of Prince's impairments at Step Two was harmless error.

_____

[2] The ALJ may have focused exclusively on the three impairments he found severe at Step Two based on Prince's own emphasis in her application for disability.  In Prince's Disability Report, under the section "Medical Conditions," when asked to list all of the physical or mental conditions that limit her ability to work, Prince wrote: "Arthritis upper neck carpal tunnel tendonitis numbness."  R. at 315.  In addition, her Hearing Memorandum only discussed her hand and wrist, neck, back, and shoulder pain.  R. at 366–76.  Nonetheless, because Prince testified about her headaches and both her headaches and her respiratory impairments are part of the Record, the ALJ should consider them on remand.

At Step Three, the ALJ must determine whether a claimant has an impairment listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  "If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits."  Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995) (quoting Dixon v. Heckler, 785 F.2d 1102, 1103 (2d Cir. 1986)).  "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  Brown v. Apfel, 174 F.3d 59, 64 (2d Cir. 1999) (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)); see also 20 C.F.R. § 404.1526(a).

ALJ DiBiccaro's finding that Prince's conditions did not meet or medically equal any of the listed impairments was supported by substantial evidence.  The ALJ identified the listed impairments that most closely matched Prince's conditions and determined that the clinical evidence did not meet the criteria of the impairments.  See R. at 15.  Prince does not identify a specific listing that she believes the ALJ mentioned but failed to adequately analyze, or that the ALJ overlooked altogether.  See Pl.'s Mem. at 6–7.  Instead, she argues that "[t]he effects of the combination of impairments that I have do meet or medically equal the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id. at 9.  To the extent that Prince argues that her overall limitations approximate the descriptions in the listing, her argument should be directed to the ALJ's formulation of her RFC, not the question of whether she experiences the equivalent of a listed impairment.  See Sullivan, 493 U.S. at 892 ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional

impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.")

Finally, Prince argues that her respiratory difficulties and migraines, which ALJ DiBicarro did not list as severe at Step Two, were altogether ignored at later steps of the sequential analysis. <u>See</u> Pl.'s Mem. at 6–7. Prince's argument that the ALJ ignored her respiratory condition overlooks her RFC, which included the limitation that Prince "must avoid concentrated exposure to dust, gases, fumes, and other environmental irritants." <u>See</u> R. at 16. While the ALJ should have discussed Prince's respiratory conditions in his Decision, the inclusion of the respiratory impairment in Prince's RFC shows that the ALJ considered this non-severe impairment and incorporated it into his conclusion about Prince's ability to work.

In contrast, the ALJ did not mention Prince's migraines once in his Decision, including in the RFC. Prince's reports of her migraines to physicians, which might corroborate her testimony regarding the severity of her migraines, are inconsistent. Prince complained of headaches in doctor visits around the time of the onset of her disability. <u>See</u> R. at 491 (Dr. Ramin 9/9/2008 treatment notes), 504 (Dr. Phipps 1/30/2009 treatment notes). However, over the course of her visits with her most recent physician, Dr. Samma, Prince has repeatedly denied having headaches. <u>See</u> R. at 675–700 (treatment notes for the period October 2012 to July 2014 either report of no headaches or have no comment regarding headaches).

However, the lack of a specific finding about Prince's headaches hampers the court's ability to carry out its function of reviewing the ALJ's determinations under the

substantial evidence standard. On remand, the ALJ should analyze and make credibility determinations regarding the record about Prince's headaches.

## VI. CONCLUSION

For the reasons stated above, the Motion for Order Reversing the Commissioner's Decision is **GRANTED**, and the Motion for Order Affirming the Decision of the Commissioner is **DENIED**. The case is remanded to the ALJ for proceedings consistent with this Ruling. The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge who issued this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 19th day of January, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge